UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

LISA DIMOLA,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

----------------------------------X

**<u>MEMORANDUM AND ORDER</u>**
20-cv-3808 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Lisa Dimola ("Plaintiff") appeals the final decision of defendant, the Commissioner of Social Security (the "Commissioner" or "Defendant"), finding her not eligible for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), on the basis that Plaintiff is not disabled within the meaning of the Act.  Presently before the court are Plaintiff's motion for judgment on the pleadings (ECF No. 13-1, Memorandum of Law in Support of Plaintiff's Motion for Judgment, ("Pl. Mem.")) and Defendant's cross-motion for judgment on the pleadings (ECF No. 15-1, Memorandum of Law in Support of the Defendant's Cross-Motion, ("Def. Mem.")).  For the reasons stated herein, Plaintiff's motion is **GRANTED**, Defendant's cross-motion is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

**Background**

The parties have submitted a joint stipulation of relevant facts, which the court has reviewed and incorporates by reference in its entirety. (*See generally* ECF No. 16, Joint Stipulation of Relevant Facts ("Joint Stip.").) Having reviewed the joint stipulation of relevant facts, the Administrative Law Judge's ("ALJ") decision, and the administrative record, the court briefly recounts the facts relevant to the instant motions.

Plaintiff was born in 1971, and formerly worked as an office manager and part-time office worker. (Joint Stip. at 1.) On April 5, 2016, Plaintiff applied for SSI benefits under Title XVI of the Act. (ECF No. 17, Administrative Record ("Tr.") at 85 (showing effective filing date), 181-89.) Plaintiff alleged that the onset date of her disability was January 1, 2010, due to post-herpetic neuralgia and thyroid isthmus. (Tr. 181, 201.) The Social Security Administration ("SSA") initially denied Plaintiff's application on May 26, 2016, finding Plaintiff's conditions of postherpetic neuralgia and thyroid isthmus were not severe enough to keep her from working. (Tr. at 86.) Plaintiff requested reconsideration of her application on August 1, 2016, and it was again denied on February 2, 2017. (Tr. at 102-103, 107). Plaintiff filed a written request for a hearing on April 10, 2017, and on February 22, 2019, a hearing before an ALJ was held. (Tr. at 15.) On April 15, 2019, the ALJ denied Plaintiff's

claims for SSI benefits, finding that she was not disabled.  (Tr. at 22.)   The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 416.967(a)[1] except she could only occasionally use her hands for lifting, carrying, gross manipulation, and fine manipulation.  (Tr. at 18.)

Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review on June 17, 2020, making the ALJ's decision the final decision of the Commissioner.  (Tr. at 1.)  This appeal followed. (*See generally*, Pl. Mem.)

## Standard of Review

A claimant must be "disabled" within the meaning of the Act to receive benefits.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   *Id.* § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000).

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R § 416.967(a).

The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner set forth a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled.  *See* 20 C.F.R. § 404.1520.  The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4).  During this five-step process, the Commissioner must consider whether "the combined effect of all of [a claimant's] impairments," including those that are not severe, would be of sufficient severity to establish eligibility for Social Security benefits.  20 C.F.R. § 404.1523(c).

"The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted).

"However, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* (internal quotation marks and alteration, and citations omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform [his] past relevant work [and considering his residual functional capacity, age, education, and work experience], is able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . .; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)) (alterations in original).

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached

a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess*, 537 F.3d at 127 (internal quotation marks omitted) (quoting *Shaw*, 221 F.3d at 131). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted). Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (second alteration in original) (internal quotation marks omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

Therefore, even though the court will afford the ALJ's determination substantial deference, a remand for further findings may be appropriate where the ALJ does not fulfill his or her affirmative obligation to develop the record. *See Butts v. Barnhart,* 388 F.3d 377, 386 (2d Cir. 2004) ("[I]n cases where the ALJ fail[s] to develop the record sufficiently to make appropriate disability determinations, a remand for further findings that

would so plainly help to assure the proper disposition of the claim is particularly appropriate." (internal quotation marks and citation omitted)); *see also Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755-57 (2d Cir. 1982) (noting that, in deciding whether substantial evidence supports the Commissioner's findings, courts must first ensure that claimant has a full, fair, and adequate hearing and that all relevant facts are developed).

## Discussion

### I.   The ALJ's Decision

The ALJ analyzed plaintiff's application using the five-step sequential evaluation process, as mandated by the Act's implementing regulations. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since filing her April 5, 2016 Supplemental Security Income application ("SSI"). (Tr. at 17.) At step two, the ALJ found that Plaintiff had the severe physical impairments of polyneuropathy, neuralgia, myelopathy, inflammatory polyarthritis, cervical and lumbar spine degenerative disc disease, lower extremity lymphedema, bilateral carpal tunnel syndrome, hypothyroidism, and obesity. (Tr. at 17.) The ALJ did not find Plaintiff's medically determinable mental impairment disorder to be severe. (Tr. at 17.) Upon considering the four broad areas of mental functioning set out in disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, part 404, subpart P, appendix 1), the ALJ

determined that Plaintiff's mental impairment disorder did not cause more than minimal limitation in her ability to perform basic mental work activities. (Tr. at 17.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. at 18.)

In considering Plaintiff's symptoms to determine her RFC, the ALJ followed a two-step process in which he first determined whether there is an underlying medically detrimental physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. (Tr. at 20.) Thereafter, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's work-related activities. (Tr. at 19-20.) The ALJ concluded Plaintiff retained the RFC to perform sedentary work except that she could only occasionally use her hands for lifting, carrying, gross manipulation, and fine manipulation. (Tr. at 18.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in this record. (Tr. at 20.)

At step four, the ALJ found that Plaintiff had no past relevant work.  (Tr. at 21.)  At step five, the ALJ considered vocational expert testimony and concluded that Ms. Dimola could perform jobs in the local and national economy, including roles such as a surveillance systems monitor, call-out operator, and election clerk.  (Tr at 21, *see* Tr. at 57.)  Accordingly, the ALJ found that plaintiff was not "disabled" and not entitled to disability benefits under the Act.  (Tr. at 22.)

I.  **The ALJ's RFC Determination Is Not Supported by Substantial Evidence**

The court finds that the ALJ's RFC determination is not supported by substantial evidence.  "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g).  Medical records alone cannot provide substantial evidence for an RFC determination; rather, an "ALJ's RFC determination must be supported by a medical *opinion* in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-cv-3030(AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021) (emphasis added).  Here, the ALJ only evaluated medical records

and did not seek or consider medical opinions or other medical experts in making his RFC determination.

"Though the ALJ is not required to seek additional information when there is a complete medical history, gaps in the record can be created when there is a lack of opinion evidence, and "it is considered 'reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.'" *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Williams v. Comm'r of Soc. Sec.* 366 F. Supp. 3d 411, 418 (W.D.N.Y. 2019) (quoting *Falcon v. Apfel*, 88 F.Supp.2d 87, 91 (W.D.N.Y. 2000). As a general rule, "where the transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitations..., to fulfill the responsibility to develop a complete record the ALJ must recontact [an acceptable medical] source, order a consultative examination, or have a medical expert testify at the hearing." *Skupien v. Colvin*, No. 13-cv-403S (WMS), 2014 WL 3533425, at *6 (W.D.N.Y. July 16, 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008).

Here, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR § 416.967(a) except she can only occasionally use her hands for lifting, carrying, gross manipulation, and fine manipulation. (Tr. at 18.) In making this

finding, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR § 416.927". (Tr. at 18.)  The ALJ first noted that though Plaintiff filled out the medical source statement, but because Plaintiff is not medical professional, the ALJ ascribed no weight to the medical source statement in his RFC determination. (Tr. at 20.)  Second, the ALJ noted that "no doctor or other treating physician describes Plaintiff as disabled or advises she is unable to work in any capacity". (Tr. at 21.)  In making his RFC determinations, the ALJ did not obtain and consider medical opinion evidence, medical source statements, physical consultative examinations, vocational or other expert testimony at the hearing to indicate Plaintiff's RFC. (Tr. at 68, 70.)  The record must include more than mere medical findings. *See Dennis v. Colvin*, 195 F. Supp 3d 469 (W.D.N.Y. 2016) (internal citation omitted) (remanding because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."); *see also Shaw*, 221 F.3d at 134—35 ("Neither the trial judge nor the ALJ is permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion.  [They cannot impose] their notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.")

The ALJ relied only on the medical records from Florida, including "Dr. Patel, Dr. Lyon, Coastal Neuro, Dr. Tucker, and Volusia Hand Surgery." (Tr. at 32.) But the ALJ did not obtain records from two outstanding sources identified in the transcript from Northwell Health, where Plaintiff began treatment in late 2017, and from the Neuroscience Institute at Great Neck. (Tr. at 32, 34.) The ALJ kept the record open for two weeks to obtain the two outstanding sources from Northwell Health and Neuroscience Institute at Great Neck in New York. (Tr. at 34.) The ALJ asked if any doctor was able to "pin down" Plaintiff's conditions or illnesses, however, Plaintiff responded that the doctors did not know and have said the source of her symptoms are not easily evaluated by medical professionals. (Tr. at 44-45.) The ALJ asked which doctor at Northwell Health best knew of Plaintiff's condition, and Plaintiff responded Dr. Anthony Geraci, who met with her once and conducted her cervical MRI. (Tr. at 46.) The ALJ acknowledged that the case "is very underdeveloped" and that there was no medical evidence from the year and half Plaintiff lived in New York. (Tr. at 68.) Plaintiff's attorney highlighted to the ALJ that if anything in the outstanding records led him to believe a possible consultative examination would be necessary, "we welcome that". (Tr. at 70.) The ALJ responded that he would "certainly consider that again." The hearing concluded with no further indication of missing medical evidence being ordered or

reviewed.   (Tr. at 68.)

Here, the ALJ erred in determining Plaintiff's RFC without further developing the record to include medical opinions from treating or other doctors.  See *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (finding that an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."); *see also Ortiz v. Colvin*, 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted) (holding that ALJs were not medical professionals and thus "not qualified to assess a claimant's RFC on the basis of bare medical findings.")  Plaintiff's record consists mostly of test results, imaging and laboratory reports, and brief notations regarding her symptoms and diagnosis, and are devoid of any medical opinion evidence regarding her physical impairments and RFC.  *See e.g., Diberardino v. Comm'r of Soc. Sec.*, No. 17-cv-2868 (PKC), 2018 WL 3404141, at *3 (E.D.N.Y. July 12, 2018) (finding that the ALJ failed to further develop the medical record which "consisted mostly of test results and laboratory reports, with brief notations and comprehensive reports of Plaintiff's status" and did not contain any opinion from Plaintiff's treating physicians) (internal quotations and citations omitted).  Although the ALJ acknowledged that "the case is very underdeveloped", (Tr. at 67), and has a "complete lapse of evidence for over a year and a half", (Tr. at 71), the ALJ "did not endeavor to obtain opinions from any

of Plaintiff's treating physicians about Plaintiff's claimed disabilities". *See Diberardino*, 2018 WL 3404141, at *3.

The ALJ also erred in relying on the absence of treating source opinions that describe Plaintiff as disabled or advise that she is unable to work in any capacity to reach his conclusion of her RFC. (Tr. at 21.) Courts in this Circuit have held that "'an ALJ may not rely, as fact-finders in adversarial proceedings customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him.'" *Sanchez v. Barnhart*, 329 F. Supp.2d 445, 450 (S.D.N.Y. 2004) (quoting *Thomas v. Barnhart*, No. 01-cv-518 (GEL), 2002 WL 31433606, at *4 (S.D.N.Y. Oct. 30, 2002) (emphasis in original)); *Ubiles v. Astrue*, No. 11-cv-6340 (MAT), 2012 WL 2572772, at *10 (W.D.N.Y. July 2, 2012) ("The ALJ referenced the consultative examinations with those specialists and apparently penalized Plaintiff for their absence, stating that 'there are no consultative reports in the exhibit file.' This ... cannot be a harmless error because the ALJ relied on perceived gaps in the medical evidence to find Plaintiff not disabled...The ALJ also relied on these gaps in the record to discredit Plaintiff's subjective complaints of pain and physical limitations...") (internal citations omitted).

Defendant contends the ALJ in this case was not required to take any further action to develop the record and the evidence

was sufficient to render a decision because "[n]otably, Plaintiff was represented by an attorney before the ALJ, and Plaintiff's attorney confirmed that the record from Plaintiff's treating providers was complete." (Def. Mem. at 5, citing Tr. at 32-34.) Plaintiff, however, is not solely responsible for developing the record. It is well-established that even if a plaintiff is represented, an ALJ "has an affirmative obligation to develop the administrative record." *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Calero v. Colvin*, No. 16-cv-6582 (PAE), 2017 WL 4311034, at *9 (S.D.N.Y. Sept. 26, 2017) (holding that an ALJ has an independent duty to develop the record). Here, the lack of opinion or other evidence regarding Plaintiff's RFC creates an obvious gap in the record, and "[i]t is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (quotation omitted). *Falcon*, 88 F.Supp.2d at 91. The ALJ was "required to exercise his independent duty to develop the record and, at a minimum, secure a consulting physician to examine Plaintiff and render an opinion as to her functional limitations". *Williams*, 366 F. Supp. 3d at 415–18.

In sum, the ALJ concluded that Plaintiff had multiple severe impairments, including polyneuropathy, neuralgia, myelopathy, inflammatory polyarthritis, cervical and lumbar spine degenerative disc disease, lower extremity lymphedema, bilateral

carpal tunnel syndrome, hypothyroidism, and obesity. (Tr. at 17.) Despite these impairments, the ALJ assessed Plaintiff's RFC without the benefit of any medical opinion evidence as to Plaintiff's functional limitations. This was an error. *See Williams*, 366 F. Supp. 3d at 418 (finding that the ALJ erred in assessing an RFC of Plaintiff who had multiple severe impairments without the benefit of any opinion evidence as to Plaintiff's functional limitations); *see also Pearson*, 2021 WL 3373132, at *4 ("[A]n ALJ's RFC determination must be supported by a medical opinion in the record at that time."). Furthermore, the ALJ's failure to obtain complete treating physicians' records, reports, consultative, and medical opinions compels this court's conclusion that the ALJ's RFC finding is not supported by substantial evidence. *See, e.g., Nusraty v. Colvin,* 15-cv-2018 (MKB), 2016 WL 5477588, at *13 (E.D.N.Y. Sept. 29, 2016) (finding that the ALJ had an "affirmative duty" to develop the record and "should have followed up with [the treating physicians] to request supporting documentation or to obtain additional explanations for [their] findings"); *Lamorey v. Barnhart,* 158 Fed. App'x 361, 362 (2d Cir. 2006) (where ALJ fails to adequately develop the record by requesting treating physician's notes, remand is usually appropriate).

Accordingly, the ALJ's failure to develop the record to obtain substantial evidence to support the ALJ's RFC determination

requires remand.   On remand, the ALJ must further develop the record by obtaining medical opinion evidence addressing Plaintiff's functional limitations and consider securing a consulting physician to examine Plaintiff.

## III. The ALJ's Insufficient Credibility Determination and Explanation

The court also finds that the ALJ did not sufficiently evaluate Plaintiff's testimony of pain and other symptoms, erring in his credibility determination of Plaintiff. [2] *See Cabassa v. Astrue*, No. 11-cv-1449 (KAM), 2012 WL 2202951, at *13 (E.D.N.Y. June 13, 2012) (finding that the ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms.) Remand is appropriate when an ALJ "fails [to] sufficiently explain a finding that the claimant's testimony was not entirely credible." *Valet v. Astrue*, No. 10-cv-3282 (KAM), 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (citing *Tornatore v. Barnhart*, No. 05-

---

[2] Defendant correctly notes that the Commissioner eliminated the term "credibility" when evaluating symptoms in disability claims, *see* SSR 16-3p, prior to Plaintiff's application for Disability Insurance Benefits. (Def. Mem. at 6.)  SSR 16-3p, which became effective March 28, 2016, supersedes SSR 96-7p, and applies here.  This court will address whether the ALJ properly evaluated and explained his credibility determinations regarding the Plaintiff's subjective statements as related to their consistency with the rest of the record.  *See Figuero v. Comm'r of Soc. Sec.*, No. 20-cv-2700 (KAM), 2021 WL 4295313, at *12 (E.D.N.Y. Sept. 21, 2021) (applying SSR 16-3p, the court addressed the issue of whether the ALJ failed to adequately assess the credibility of Plaintiff's statements); *see also Esptein v. Comm'r of Soc. Sec.*, No. 19-cv-3624 (PKC), 2020 WL 5708716, at *1 (E.D.N.Y. Sept. 24, 2020) (the court applied SSR 16-3p and also used language of credibility determination in reference to consistency with the record).

cv-6858 (GEL), 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006)).
"At the first step, the ALJ must decide whether the claimant
suffers from a medically determinable impairment that could
reasonably be expected to produce the symptoms alleged." *Genier
v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. §
404.1529(b)).  During the first step, an ALJ should not consider
whether the severity of an individual's alleged symptoms is
supported by objective medical evidence.  S.S.R. 16-3P, 2016 WL
1119029, at *3.  "If the claimant does suffer from such an
impairment, at the second step, the ALJ must consider 'the extent
to which the claimant's symptoms can reasonably be accepted as
consistent with the objective medical evidence and other evidence'
of record." *Genier*, 606 F.3d at 49 (alteration omitted) (quoting
20 C.F.R. § 404.1529(a)).

Social Security Ruling ("SSR") 16-3p establishes that at
step two, the ALJ must evaluate at "the [seven] factors set forth
in 20 CFR § 404.1529(c)(3) and § 416.929(c)(3)." SSR 16-3p, 2017
WL 5180304, at *7 (October 25, 2017).  These include:

> (1) Daily activities; (2) The location, duration,
> frequency, and intensity of pain or other symptoms; (3)
> Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects
> of any medication an individual takes or has taken to
> alleviate pain or other symptoms; (5) Treatment, other
> than medication, an individual receives or has received
> for relief of pain or other symptoms; (6) Any measures
> other than treatment an individual uses or has used to
> relieve pain or other symptoms (e.g., lying flat on his
> or her back, standing for 15 to 20 minutes every hour,

or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8; *see also* 20 C.F.R. § 404.1529(c).

Further, "the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." *Alcantara v. Astrue*, 667 F.Supp.2d 262, 277–78 (citing *Lugo v. Apfel,* 20 F.Supp.2d 662, 663 (S.D.N.Y. Sept. 28, 1998)). A review of the entire record includes objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record. SSR 16-3P, 2016 WL 1119029, at *4-6.

Plaintiff contends that the ALJ failed to conduct the required analysis before rejecting her testimony regarding the limiting effects of her impairments. (Pl. Mem. at 15.) Here, Plaintiff testified that she had shingles twice, which caused neuropathy. (Tr. at 20.) She has significant pain in both hands, legs, and feet, has tremors in her hands, has trouble holding things, and cannot lift anything heavy. (Tr. at 20.) She testified that her hands experience spasms, and she drops things, and that she cannot write in the morning. (Tr. at 20.) She further testified that she is always weak and dizzy, cannot concentrate on anything, has full body spasms, falls a lot, and cannot sleep at night. (Tr. at 20.) She described being able to

stand for approximately five to seven minutes before she has pain
and a burning sensation in her legs and is able to walk
approximately one block at a time. (Tr. at 41.)

        The ALJ applied the two-step process for evaluating
Plaintiff's symptoms.  First, he acknowledged that Plaintiff's
impairments could "reasonably be expected to cause the alleged
symptoms." (Tr. at 20.)  In the second step, however, he concluded
that her "statements concerning the intensity, persistence, and
limiting effects are not entirely consistent with the medical
evidence and other evidence in this record." (Tr. at 20.)  The
ALJ referenced Plaintiff's reported activities of daily living at
the hearing as inconsistent with Plaintiff's symptoms, noting that
"she is able to care for her personal needs with assistance". (Tr.
at 20.)  He also mentioned that her "work history is erratic,"
"her subjective allegations are in excess of what would be
reasonably expected from the objective medical evidence," and that
she "moved to Florida in 2016, then recently came back". (Tr. at
20.)  In finding that the Plaintiff's testimony was inconsistent
with the medical record, ALJ relied on medical reports that
referred to Plaintiff's symptoms and the objective severity of the
impairments. (Tr. at 20.)

        This court has reviewed the ALJ's decision and finds
that he did not adequately consider Plaintiff's subjective
statements.  The ALJ did not evaluate the consistency of

Plaintiff's symptoms and the credibility according to the seven factors mentioned above as required by the regulations and SSR 16-3p.  20 C.F.R. 404.1529(c)(3); *see e.g.*, *Grosse v. Comm'r of Soc. Sec.*, No. 08-cv-4137 (NGG), 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding that ALJ "committed legal error" because he failed to consider any of the credibility determination factors except the claimant's daily activities).  The ALJ only discussed Plaintiff's daily activities and did not mention the other applicable factors listed in SSR 16-3p. (Tr. at 20).  "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238-39 (E.D.N.Y. 2014) (internal quotation marks and citations omitted).  Furthermore, the ALJ's mention of Plaintiff's ability "to care for her personal needs with assistance," her "erratic" work history, and the fact that she "moved to Florida in 2016, then recently came back" does not constitute evidence of Plaintiff's ability to perform sedentary work. (Tr. at 20); *see Archambault v. Astrue*, No. 09-cv-6363 (RJS) (MHD), 2010 WL 5829378, at *30 (S.D.N.Y. Dec. 13, 2010) ("Plaintiff's ability to engage in certain limited daily activities, [including self-care, childcare duties, a few household chores, and some pastimes], does not provide evidence of

his ability to perform sedentary work unless he can perform those daily activities at a level consistent with the demands of sedentary work.") (citations omitted)); *see also Larsen v. Astrue*, No. 12-cv-00414 (CBA), 2013 WL 3759781, at *3 (E.D.N.Y. July 15, 2013) ("Evidence that the plaintiff occasionally travelled by plane is also not by itself inconsistent, especially in light of evidence...indicating that her symptoms worsened after her trips".)

Lastly, the ALJ cannot disregard the Plaintiff's testimony simply because her pain or symptoms do not exactly align with the medical evidence. *Hudson v. Berryhill*, No. 17-cv-463 (MAT), 2018 WL 4550310, at *6 (W.D.N.Y. Sept. 21, 2018) (internal quotation marks, citation, and brackets omitted) (finding that an ALJ could not "reject the claimant's statements about the intensity and persistence of her pain or other symptoms or about the effect her symptoms have on her ability to work solely because the available objective evidence does not substantiate the claimant's statements."); *see also Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010) (citation omitted) ("Even if subjective pain is unaccompanied by positive clinical findings or other objective medical evidence, it may still serve as the basis for establishing disability.") A plaintiff who "alleges a disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain, but [can

22

instead cite to] medical signs and laboratory findings which show that the claimant has a medical impairment which could reasonably be expected to produce the pain." *Meadors v. Astrue*, 370 F. App'x 179, 185 (2d Cir. 2010).

For the foregoing reasons, remand is warranted a for proper credibility evaluation and explanation of Plaintiff's statements regarding the intensity, persistence, and limiting effects of her pain and other symptoms and limitations. *See Pavia v. Comm'r of Soc. Sec.*, No. 10-cv-818 (GTS) (DEP), 2013 WL 5652497, at *6 (N.D.N.Y. Oct. 15, 2013) ("Both case law and the social security regulations prohibit an ALJ from discrediting a plaintiff's statements solely based upon objective medical evidence." (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) and 20 C.F.R. § 404.1529(c)(2))); *Perez v. Barnhart*, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) (quoting Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)) ("[T]he subjective element of pain is an important factor to be considered in determining disability.")

On remand, the ALJ "should inquire into the particular nature of the plaintiff's daily activities and how her allegations of pain limit these activities before determining her credibility". *Larsen*, 2013 WL 3759781, at *3. On remand, the ALJ should also carefully weigh each of the factors set forth in 20 C.F.R. § 416.929(c)(3) and indicate exactly how Plaintiff's

subjective symptoms including pain factor into his ultimate RFC determination.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED,** Defendant's motion for judgment on the pleadings in **DENIED,** and this case is **REMANDED** for further proceedings consistent with this Memorandum and Order. The Clerk of Court is directed to enter judgment remanding this case, and to close the case.

**SO ORDERED.**

DATED:   May 24, 2022

Brooklyn, New York

_____ /s/ Kiyo Matsumoto _____

**HON. KIYO A. MATSUMOTO**

United States District Judge